IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RESERVATIONS UNLIMITED, LLC,
and DAVID WILCOX

      Plaintiffs,

vs.                                                          No. CV 19-1061 KG/KK

NEWTEK SMALL BUSINESS FINANCE, LLC,
and CHRISTINE BEDROSSIAN,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This action arises from the parties' dispute over a small business loan agreement executed for the purchase of commercial real estate in Red River, New Mexico. (Doc. 1-1) at 4-10. Plaintiff Reservations Unlimited, LLC (Reservations), contends Defendant Newtek Small Business Finance, LLC (Newtek), misrepresented an essential aspect of the parties' agreement. *Id.* In pertinent part, Plaintiff David Wilcox, the owner of Reservations, alleges non-resident Defendant Christine Bedrossian, an employee of Newtek, falsely assured him that she would comply with the parties' alleged agreement but then failed to fulfill her obligation. *Id.* Plaintiffs commenced this action in the First Judicial District Court, County of Santa Fe, and Defendants timely removed the case to this Court based on diversity jurisdiction. (Doc. 1) at 1-3.

Presently before the Court is Defendants Newtek and Christine Bedrossian's Motion to Dismiss for Failure to State a Claim and for Lack of Personal Jurisdiction as to Ms. Bedrossian (Motion to Dismiss), filed December 9, 2019. (Doc. 9). The matter is fully and timely briefed. *See* (Doc. 20, Response, and Doc. 21, Reply). The Court notes jurisdiction under 28 U.S.C. §

1332(a).  Having considered the parties' briefing, the record, and the relevant law, the Court grants in part and denies in part the Motion to Dismiss.

I.      *The Complaint*

On November 14, 2018, Reservations secured a Small Business Administration (SBA) guaranteed loan through Newtek to finance the purchase of a commercial property in Red River, New Mexico.  (Doc. 20-2) at 1.  According to Reservations, the loan was "contingent on an appraisal of the [p]roperty with a value of at least $380,000 or more."  (Doc. 1-1) at 5.  Specifically, the purchase agreement included a provision that "if the buyer or buyer's lender obtains an appraisal less tha[n] the sales price in the Purchase Agreement, the buyer and seller may amend the sales price to reflect the appraisal or the buyer may elect to terminate the agreement and the earnest money shall be refunded to [the] buyer."  *Id.*

On December 11, 2018, Mr. Wilcox contacted Newtek and requested a copy of its appraisal.  *Id.* at 6.  In response, Ms. Bedrossian allegedly explained that Newtek would release its appraisal of the property after the sale closes.  *Id.*  However, Ms. Bedrossian purportedly explained "if the appraisal c[o]me[s] in lower than $380,000[,] Newtek would then advise Wilcox."  *Id.*

Days later, on December 18, 2018, Newtek's appraisal management firm, Asset Valuation Services, LLC (Asset), conducted an appraisal of the property.  *Id.*  Asset appraised the fair-market value of the property at $220,000.  *Id.*  Despite the $160,000 difference in the appraised value and the negotiated sale price, Newtek allegedly did not inform Reservations of Asset's conclusions.  *Id.*  Shortly thereafter, on December 26, 2018, the sale closed.  *Id.*

In their Complaint, Plaintiffs contend Defendants were contractually obligated to disclose the fair-market value of the property after it was appraised for $160,000 less than the sale price.

*Id.* at 4-6.  Plaintiffs raise four counts based on Defendants' alleged nondisclosure: (1) negligent misrepresentation; (2) negligence; (3) fraudulent misrepresentation; and (4) breach of contract. *Id.*  In pertinent part, Plaintiffs allege Defendants' conduct was "intentional, malicious, willful, reckless, wanton, fraudulent, or in bad faith."  *Id.* at 6.  Plaintiffs seek judgment against Defendants, compensatory and punitive damages, and an award of attorney fees.  *Id.* at 7.

## II.    *The Motion to Dismiss*

Defendants now jointly move under Federal Rule of Civil Procedure 12(b) to dismiss each of Plaintiffs' four counts.  (Doc. 10).  First, Defendants allege the negligent misrepresentation, negligence, and fraudulent misrepresentation claims each fail because Defendants did not owe a duty to Plaintiffs.  *Id.* at 6-12.  Second, Defendants argue Plaintiffs' breach of contract claim fails because Reservations was not a party to the contract allegedly breached.  *Id.* at 13-15.  Lastly, Defendants move to dismiss the claims against Ms. Bedrossian under Rule 12(b)(2), arguing she is not subject to either specific or general personal jurisdiction in the State of New Mexico.  *Id.* at 15-19.  Plaintiffs oppose the Motion to Dismiss in its entirety. (Doc. 20).

## III.    *Standard*

### A.  *Rule 12(b)(6)*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (citation omitted).  In addition to reviewing the four corners of the complaint, a court may also consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity[.]"  *Id.* at 1158.  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (citation omitted).

In making this plausibility assessment, courts "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citation omitted). As a result, a court "may not dismiss on the ground that it appears unlikely the allegations can be proven." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008). "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context[.]" *Id.* at 1248. Accordingly, a court should conduct its plausibility and sufficiency analyses on a case-by-case basis. *See id.* at 1248-49 (explaining complaint alleging simple negligence may require less factual support than conspiracy or qualified immunity action).

B. *Rule 12(b)(2)*

When a defendant files a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of proving personal jurisdiction. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (explaining that "when the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists"). The plaintiff's burden at this stage is "light," and they need only demonstrate a "prima facie showing that jurisdiction exists" to defeat a motion to dismiss. *Id.* A court may exercise jurisdiction "over a nonresident defendant in a diversity action if a plaintiff can establish that (1) jurisdiction is proper under the laws of the forum state and (2) the exercise of jurisdiction does not offend due process." *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001). At a minimum, the plaintiff must demonstrate that

4

"minimum contacts exist between the defendant and the forum state such that maintenance of the lawsuit would not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 1210 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).

IV.    Discussion

    A.  Rule 12(b)(6) and Counts I, II, & III: Negligent Misrepresentation, Negligence, and Fraudulent Misrepresentation

Under New Mexico law, a defendant must owe a legal duty to the plaintiff to be held liable for negligent misrepresentation, negligence, and fraudulent misrepresentation. *See R.A. Peck, Inc. v. Liberty Federal Sav. Bank*, 1988-NMCA-111, ¶ 10, 108 N.M. 84 (holding that "[n]egligent misrepresentation is an action governed by the general principles of the law of negligence"); *Zamora v. Wells Fargo Home Mortgage*, 2012 WL 12895364, at *11 (D.N.M.) (explaining that "[t]o support a negligence claim, New Mexico state law requires that there be a duty owed from the defendant to the plaintiff") (internal quotation omitted); *McElhannon v. Ford*, 2003-NMCA-091, ¶ 12, 134 N.M. 124 (clarifying that "party can be held liable for [fraudulent] nondisclosure only when there is a duty to disclose"). Accordingly, while the elements of each cause of action are distinct, Plaintiffs first must allege facts that prove the existence of a legal duty to recover under each theory.

"[I]n New Mexico, the existence and scope of a defendant's duty of care is a question of law." *Zamora*, 2012 WL 12895364, at *11 (citing *Thompson v. Potter*, 2012-NMCA-014, ¶ 19, 268 P.3d 57). To determine the contours of a defendant's duty, "courts should consider the nature of the activity in question, the parties' general relationship to the activity, and public policy considerations." *Id.* However, before the court imposes a duty, "a relationship must exist that legally obligates a defendant to protect a plaintiff's interest." *Id.*

Generally, there is no legal duty imposed in an ordinary lender-borrower relationship. *See id.* at *11-12 (concluding neither statutory law nor common law impose "duty of care" between "borrower and [] lender"). Nonetheless, a duty may arise under "special circumstances." *Id.* at *12. For example, "if the lender undertakes activities outside the normal course of business with a borrower so as to establish a joint venture," a duty may exist. *Id.* In addition, a "fiduciary or confidential relationship" may give rise to a duty if one party "has superior knowledge not possessed by the other party, possesses information that could not be discovered by the exercise of reasonable diligence, or has knowledge that the other party is acting under a mistaken belief as to a material fact." *Shea v. H.S. Pickrell Co., Inc.*, 1987-NMCA-149, ¶ 9, 106 N.M. 683.

Plaintiffs acknowledge that "absen[t] a special relationship between the parties, one party generally does not have a legal duty to protect another from harm[.]" (Doc. 20) at 5. Indeed, Plaintiffs do not argue a special relationship exists to impose a duty on Defendants. Instead, Plaintiffs present three alternative bases for the imposition of a legal duty. *Id.* at 4-7.

First, Plaintiffs argue "Defendants knew that the Plaintiffs were operating under a mistaken belief of fact." *Id.* at 5. Specifically, Plaintiffs allege Defendants gave them "a false impression" and "made no effort to correct this information." *Id.* However, to establish a duty, Plaintiffs must allege facts showing that: (1) Defendants "ha[d] knowledge that [Plaintiffs] act[ed] under a mistaken belief as to a material fact;" and (2) "a fiduciary or confidential relationship exist[ed]" between the parties. *See Shea*, 1987-NMCA-149, at ¶ 8.

Plaintiffs' argument omits the second element: factual allegations establishing a fiduciary or confidential relationship. Indeed, the law is plainly conjunctive, requiring both knowledge of a mistaken belief "and" the existence of a fiduciary or confidential relationship. *See Shea*, 1987-

NMCA-149, at ¶ 9.  Therefore, even assuming Defendants "knew that the Plaintiffs were operating under a mistaken belief of fact," to establish a legal duty Plaintiffs must allege facts demonstrating a confidential or fiduciary relationship.  *See* (Doc. 20) at 5.  Plaintiffs have not done so, and thus, their first argument has no merit.

Next, Plaintiffs argue that the Court should impose a duty on Defendants because they "placed the Plaintiffs in [] [a] position of peril."  (Doc. 20) at 6.  In support of this theory, Plaintiffs cite *Shea*.  1987-NMCA-149, at ¶ 8.  In *Shea*, the New Mexico Court of Appeals analyzed the existence and scope of a lender's duty to a third-party purchaser.  *Id.* at ¶ 1-4.  In finding that the lender was not liable, the Court explained the special circumstances under which a lender may owe a duty to a borrower.  *Id.* at ¶ 8.  Specifically, the Court cited and summarized a Tenth Circuit case in a parenthetical:

> *see generally Gammill v. United States,* 727 F.2d 950 (10th Cir.1984) (in absence of special relationship between the parties, one party generally does not have a legal duty to protect another from harm unless a special relationship exists between the parties or the first party placed the other in a situation of peril)[.]

*Id.*  Plaintiffs appear to have crafted their "position of peril" theory from the *Shea* court's parenthetical citation to *Gammill*.  *See id.*

However, two problems plague Plaintiffs' reliance on *Shea* and the parenthetical citation to *Gammill*.  First, *Gammill* involves the application of Colorado negligence law and "a physician's duty to prevent harm to a third person who is not a patient."  727 F.2d at 954.  That factual scenario does not exist here.  Second, while the *Gammill* court explained that a defendant may owe a duty if it places another in a position of peril, it did so while citing the Restatement (Second) of Torts (Restatement).  *Id.*  Specifically, the *Gammill* court opined, "[g]enerally, [] a person does not have a duty to protect another from harm except … when the first person placed the other in peril. *See* Restatement (Second) of Torts §§ 314–314(A) (1965)."  *Id.*

The provisions of the Restatement that *Gammill* cites recognize a duty through the creation of a peril in two distinct circumstances.  First, the Restatement explains that a court may impose a duty if one party "has created an unreasonable risk of causing physical harm to another[.]"  Restatement (Second) Torts § 321(1) (1965).  Second, the Restatement states that a court may impose such a duty if one party "has caused [] bodily harm to another[.]"  *Id.* at § 322.  Consequently, to impose a duty on a party who places another in peril, the plaintiff must demonstrate either actual or perceived risk of "physical" or "bodily" harm.  *See id.* at §§ 321, 322.  Plaintiffs do not allege Defendants placed them in fear of physical or bodily harm.  Plaintiffs' argument that the Court should impose a duty on Defendants because they "placed the Plaintiffs in [] [a] position of peril" is without merit.  *See* (Doc. 20) at 6.

Finally, Plaintiffs argue the "explicit promise" in the parties' contract imposed a duty on Defendants to disclose the appraised value of the property prior to closing.  *Id.*  Particularly, Plaintiffs contend Defendants had a "contractual duty" to disclose the appraisal.  *Id.* at 6-7.  However, Plaintiffs' argument ignores that "[t]he duty giving rise to the[ir] tort claim must exist independent of any contractual obligations."  *See Qwest Corp. v. City of Santa Fe*, 2013 WL 12241274, at *10 (D.N.M.).

Indeed, "when the facts alleged in the tort claim are precisely the same as those alleged in the contract claim, the tort claim is not viable."  *Id.* (internal quotation omitted).  The Tenth Circuit has succinctly summarized New Mexico law on this point, explaining that "when a contract specifically defines the rights and duties of the parties[,] any claimed breach of an extracontractual tort duty is precluded."  *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1116 (10th Cir. 2005).  The Tenth Circuit further opined that "New Mexico case law stand[s] for the proposition that the existence of any tort liability cannot conflict with any

8

contractual duties between the parties." *Id.* (citing *Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197, 1200 (10th Cir. 1988)).  This rule is tethered in the New Mexico courts' "concept of freedom of contract and notions of contractually assumed duties."  *Id.*  As a result, Plaintiffs' argument that the contractual relationship between the parties serves as the basis for the imposition of a tort duty fails under New Mexico law.

In conclusion, Plaintiffs must allege facts that demonstrate the plausible existence of a legal duty before Defendants may be held liable for negligent misrepresentation, negligence, and fraudulent misrepresentation.  Plaintiffs have not demonstrated that a duty should be imposed on Defendants through any of their three proposed legal theories.  Plaintiffs, therefore, have not alleged plausible claims under the Rule 12(b)(6) standard, even with the alleged facts taken as true and found in their favor.  The Court will dismiss Counts I, II, and III without prejudice.

### B.  Rule 12(b)(6) and Count IV: Breach of Contract

To state a claim for breach of contract a plaintiff must demonstrate: "(1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach."  *Ormrod v. Hubbard Broad., Inc.*, 328 F.Supp. 3d 1215, 1227 (D.N.M. 2018) (quoting *McCasland v. Prather*, 1978-NMCA-098, ¶ 7, 92 N.M. 192) (internal quotations omitted).  In ascertaining whether a valid and binding contract exists, "[t]he court is no longer restricted to the bare words of the agreement in interpreting the intent of the parties to a contract, but may also consider the context in which the agreement was made."  *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 11, 114 N.M. 778.  Under New Mexico law, "[t]he question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court."  *Id.* at ¶ 12.

Plaintiffs allege the existence and scope of the contractual obligations arise from two documents—the Small Business Administration's (SBA) Authorization (Authorization), and a letter with the subject line "RE: $569,000.00 Small Business Administration Guaranteed Loan to TBD dba Reservations Unlimited" (Letter), authored by Newtek. *See* (Doc. 21) at 1-6. In addition, Plaintiffs contend that if the Court concludes neither the Authorization nor the Letter serve as a "valid and binding contract," Ms. Bedrossian made "representations" on behalf of Newtek that contractually bound Defendants. (Doc. 1-1) at 6; (Doc. 20) at 7-9. Finally, and alternatively, Plaintiffs aver that if no contract exists between the parties, "Reservations [] would at least be a third party beneficiary to the [a]uthorization as a contract between SBA and Newtek." (Doc. 20) at 9-10.

### 1. The Authorization

Plaintiffs first contend the Authorization "is a valid binding contract which binds Newtek and Reservations [] under its terms." (Doc. 20) at 8. In addition, Plaintiffs argue the Authorization "required" Newtek to obtain an appraisal of the property "showing a fair market value of at least $380,000.00." *Id.* Plaintiffs allege Defendants' failure to comply with this explicit promise renders them liable for breach of contract. *See id.* (claiming Defendants' assertion that Authorization "did not require Newtek to obtain an appraisal" is "fundamentally not true").

The SBA may "guarantee" a portion of a loan made by a lender to a small business. 13 C.F.R. § 120.2(a)(iii). If the SBA "agrees to guarantee (authorizes) a portion of the loan, the [l]ender funds and services the loan." *Id.* at § 120.2(a)(2). However, "[i]f the small business defaults on the loan, SBA's guarantee requires SBA to purchase its portion of the outstanding balance, upon demand by the [l]ender and subject to specific conditions." *Id.* Here, the

Authorization issued by SBA evidences the SBA's approval "under Section 7(a) of the Small

Business Act[], [of Newtek's] application … for SBA to guaranty 75.00% of a loan [] in the

amount of $569,000.00 to assist … Reservations[.]"  (Doc. 20-1) at 1.

Plaintiffs' contention that the Authorization creates a binding contract between Newtek

and Reservations fails for two reasons.  First, the Authorization expressly states it "is between

Lender [Newtek] and SBA and creates no third party rights or benefits to Borrower

[Reservations]."  *Id.* at 10.  Second, Reservations signed a "certification" acknowledging that

"[t]he [a]uthorization is between Lender [Newtek] and SBA and creates no third party rights or

benefits to Borrower [Reservations]."  (Doc. 21-1) at 1.  Mr. Wilcox, serving as the "Sole

Member and Manager" of Reservations, initialed and signed the notarized certification.  *Id.* at 3-

4.

Notably, the plain language of these provisions does not necessarily end the inquiry, as

New Mexico courts have "abandoned" the "four-corners" standard for contract interpretation.

*See Mark V, Inc.*, 1993-NMSC-001, at ¶ 10 (adopting "modern trend" of "contextual approach to

contract interpretation").  Indeed, under New Mexico law "a court may hear evidence of the

circumstances surrounding the making of the contract [] in order to decide whether the meaning

of a term or expression contained in the agreement is actually unclear."  *Id.* at ¶ 11 (internal

quotation and brackets omitted).

However, Plaintiffs do not allege facts demonstrating an alternative interpretation for

these clauses or allege that an ambiguity exists.  Rather, Plaintiffs omit any discussion of these

provisions and seemingly ignore their effect.  Therefore, the Court concludes these clauses are

unambiguous and serve as "conclusive" evidence that the Authorization did not serve as a

contract between Reservations and Newtek.  *See ConocoPhillips Co. v. Lyons*, 2013-NMSC-009,

¶ 23, 299 P.3d 844 (explaining "where [the contract's] language is not ambiguous, it is conclusive" and "words of the contract are to be given their ordinary and usual meaning") (internal quotations omitted).  Consequently, the Authorization cannot serve as the basis for Plaintiffs' breach of contract claim.

### 2. The Letter

Plaintiffs next allege that the Letter prepared by Newtek is "a binding contract" between the parties.  (Doc. 20) at 8.  Specifically, Plaintiffs argue the Letter requires "that an appraisal be obtained for the [p]roperty with a fair market value of $380,000."  *Id.*  Plaintiffs contend Defendants breached their contractual duties imposed by the Letter when they failed to disclose the appraisal's conclusions.  *Id.* at 8-9.

As a preliminary matter, the Letter provides "Newtek's obligations under this letter will be governed by the laws of the State of New York, ignoring conflict of law provisions."  (Doc. 20-2) at 3.  "When a claim sounds in contract, New Mexico will generally apply the choice-of-law rule of *lex loci contractus*—the law of the place of contracting."  *Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.*, 122 F.Supp. 3d 1157, 1193 (D.N.M. 2015) (citing *Ferrell v. Allstate Ins. Co.*, 2008-NMSC-042, ¶ 52, 144 N.M. 405).  However, "the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision."  *Id.* (citing *inter alia*, *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 1989-NMSC-030, ¶ 11, 108 N.M. 467).  Indeed, "[i]f the contract has a valid choice-of-law provision, that law presumptively applies."  *Ferrell v. Allstate Ins. Co.*, 2008-NMSC-042, ¶ 54, 144 N.M. 405 (citing Restatement (Second) of Conflict of Laws § 187 at 561 (1971)).

In their briefing, Defendants apply New York law in their argument regarding the Letter.  *See* (Doc. 21) at 5, n. 1.  On the other hand, Plaintiffs do not dispute, or address, the choice-of-

law provision in their Response.  The Court therefore finds the parties do not dispute application of the Letter's choice-of-law provision.  Accordingly, the Court will apply New York law.  *See* (Doc. 20-2) at 3.

The Letter, drafted by Newtek, is addressed to Mr. Wilcox "TBD dba Reservations." (Doc. 20-2) at 1.  The opening paragraph of the Letter reads: "Newtek [] is pleased to advise you that it has approved your application for a [SBA] loan subject to the satisfaction of the terms and conditions set forth herein."  *Id.*  One such "term and condition" set forth in the Letter is the "[s]atisfactory review and approval of an appraisal of the property [] with a fair market value of $380,000."  *Id.* at 3.  The Letter closes with "Very truly yours, Newtek … John Woodward, SBA Loan Underwriter."  *Id.* at 5.  Following Mr. Woodward's signature, the Letter is signed twice by Mr. Wilcox and notarized.  *Id.* at 5-6.

Defendants seemingly do not dispute that the Letter may serve as a contract between Newtek and Reservations.  *See* (Doc. 21) at 2-4 (omitting analysis of whether Letter is contract). Instead, Defendants allege the clause concerning the "satisfactory review and approval of an appraisal" evidences a "condition" of the parties' agreement rather than a contractual "promise." *Id.* at 4-5.  Thus, Defendants contend the Court cannot hold them liable for breach of contract. *Id.*

"A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y. 2d 685, 690 (N.Y. 1995) (citing *inter alia* Restatement (Second) of Contracts § 224 (1981)).  In contrast, "[a] promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."  *Merritt Hill Vineyards Inc. v.*

*Windy Heights Vineyard, Inc.*, 61 N.Y. 2d 106, 112 (N.Y. 1984).  "In determining whether a given clause makes an event a condition, doubtful language should be interpreted as a promise rather than an express condition[.]"  *VXI Lux Holdco S.A.R.L. v. SIC Holdings, LLC*, 171 A.D. 3d 189, 194 (N.Y. App. Div. 2019).  Indeed, "[c]ourts are reluctant to interpret a contractual clause as a condition precedent in the absence of such unmistakable conditional language."  *Id.* at 195 (collecting cases).

Here, the Court notes that although the Letter sets forth "terms and conditions," the appraisal provision does not contain any conditional language such as "if," "unless and until," or "null and void."  *See VXI Lux Holdco S.A.R.L.*, 171 A.D. 3d at 195 (explaining these phrases may serve as "unmistakable conditional language").  As a result, this Court is not persuaded that the Letter's language is "unmistakably conditional," as required by New York law.  *See id.*  In addition, the Court is bound by the New York courts' preference to interpret "doubtful" contractual language as a promise rather than a condition.  *See id.*  Under this legal framework, it remains plausible that Plaintiffs may prove the appraisal provision in the Letter was a contractual promise.

The Court concludes that the Authorization does not plausibly constitute a contract between Newtek and Reservations.  Conversely, the Court concludes that the Letter may plausibly serve as a contract between Newtek and Reservations which contained a promise that Defendants allegedly breached.  Thus, the Court denies Defendants' request to dismiss Plaintiffs' breach of contract claim under Rule 12(b)(6).  Furthermore, having found plausible grounds exist for Plaintiffs to state a claim for breach of contract, the Court will not address Plaintiffs' two alternative breach of contract arguments.  *See* (Doc. 20) at 7-9 (alleging email from Ms.

14

Bedrossian created binding contract and, alternatively, Reservations was third-party beneficiary to Newtek's agreement with SBA).

### C. *Rule 12(b)(2) and Personal Jurisdiction over Non-Resident Defendant, Ms. Bedrossian*

The New Mexico long-arm statute for exercising personal jusridiction is "coextensive with constitutional limitations imposed by the Due Process Clause." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (citing *Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, ¶¶ 6-8, 132 N.M. 312). Consequently, "if jurisdiction is consistent with the Due Process Clause, then New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant." *Id.* For personal jurisdiction to comply with the Due Process Clause, an out-of-state defendant must have "purposefully established minimum contacts within the forum State" and the court's conferral of personal jurisdiction must "comport with fair play and substantial justice." *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)) (internal quotations omitted).

A court may find "general (all-purpose) [personal] jurisdiction or specific (case-linked) [personal] jurisdiction" over a non-resident defendant. *Id.* (citing *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). General personal jurisdiction permits a court to "hear any and all claims against [the defendant]." *Id.* at 904 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction is based on the premise that the defendant's contacts with the state are "so continuous and systematic[,] as to render them essentially at home in the forum [s]tate." *Id.*

Specific jurisdiction, on the other hand, allows a court to exercise personal jurisdiction over an out-of-state defendant "only if the cause of action relates to the party's contacts with the forum state." *Id.* at 904 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). To impose

specific jurisdiction, the court must determine: (1) "whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and if so," (2) "whether the defendant has presented a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476-77).  Under the first inquiry, a court must ask "whether the defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004).  Indeed, if the defendant's contacts with the forum state are "random, fortuitous, and attenuated," the defendant should not "reasonably anticipate being haled into court" in the forum state.  *Id.* at 1077 (quoting *Burger King Corp.*, 471 U.S. at 486).

Plaintiffs assert Ms. Bedrossian is subject to personal jurisdiction in New Mexico because she "was directing her promise [in the email] to a New Mexico Business and it was made regarding the purchase of a New Mexico property."  (Doc. 20) at 11.  In addition, Plaintiffs contend "[t]he brunt of the injury in this case was felt by a New Mexico limited liability company." *Id.*  The Court is mindful that Plaintiffs need make only a "*prima facie* case" to establish the Court's personal jurisdiction over Ms. Bedrossian at the motion to dismiss stage. *See id.* at 10 (citing *Tompkins v. Exec. Comm. of Southern Baptist Convention*, 2015 WL 1569034 (D.N.M.)).  However, Plaintiffs have failed to meet their burden.

Ms. Bedrossian has never "visited, resided, owned property, maintained a bank account, had an office, operated a motor vehicle, filed a lawsuit, or transacted business in New Mexico." (Doc. 10-1 at 1).  As a result, Ms. Bedrossian cannot be deemed "essentially at home" in New Mexico through "continuous and systematic" contacts with the state.  *See Old Republic Ins. Co.*, 877 F.3d at 904.  Thus, the Court does not have general personal jurisdiction over Ms. Bedrossian.

In addition, two problems prevent the Court from exercising specific personal jurisdiction over Ms. Bedrossian.  First, Ms. Bedrossian's sole contact with New Mexico was sending two, seemingly very short, emails to Mr. Wilcox, who received the messages while in New Mexico.  *See* (Doc. 20) at 11.  These contacts are so "random, fortuitous, and attenuated," that Ms. Bedrossian could not "reasonably anticipate being haled into court" in New Mexico.  *Benton*, 375 F.3d at 1077-78 (quoting *Burger King Corp.*, 471 U.S. at 486).

Second, even if the Court finds Ms. Bedrossian's emails establish specific personal jurisdiction, "New Mexico recognizes the fiduciary shield doctrine, which provides that a corporation's contacts generally cannot be attributed to [] the employees of the corporation when the individuals' acts were carried out solely in their [] representative capacities."  *See Tompkins*, 2015 WL 1569034, at *7; *see also Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987) (analyzing and applying fiduciary shield doctrine).  Plaintiffs have not asserted that Ms. Bedrossian has any connection to New Mexico outside of her work with Newtek.  Accordingly, the Court has neither specific nor general personal jurisdiction over Ms. Bedrossian.  Consequently, the Court will dismiss Plaintiffs' claims against Ms. Bedrossian under Rule 12(b)(2).

V.    *Conclusion*

Based on the foregoing, the Court holds that Plaintiffs have not plausibly alleged negligent misrepresentation, negligence, and intentional misrepresentation claims.  Thus, the Court will dismiss Counts I, II, and III without prejudice pursuant to Rule 12(b)(6).  Next, the Court holds that the Letter between Reservations and Newtek may plausibly serve as the basis for Plaintiffs' breach of contract claim.  Hence, the Court will not dismiss Count IV under Rule 12(b)(6).  Lastly, the Court concludes that Plaintiffs have failed to make a *prima facie* showing

that Ms. Bedrossian is subject to the personal jurisdiction of this Court.  Accordingly, the Court

will dismiss Plaintiffs' claims against Ms. Bedrossian without prejudice under Rule 12(b)(2).

IT IS, THEREFORE, ORDERED that

1. Defendants' Motion to Dismiss (Doc. 9) is granted in part and denied in part;

2. Counts I, II, and III are dismissed without prejudice;

3. Defendant Christine Bedrossian is dismissed without prejudice; and

4. Defendant Christine Bedrossian is now terminated as a party to this lawsuit.

UNITED STATES DISTRICT JUDGE