IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RESERVATIONS UNLIMITED, LLC and
DAVID WILCOX,

    Plaintiffs,

v.                                                  Civ. No. 19-1061 KG/KK

NEWTEK SMALL BUSINESS FINANCE,
LLC and CHRISTINE BEDROSSIAN,

    Defendants.

MEMORANUM OPINION AND ORDER

This matter comes before the Court on Defendant Newtek Small Business Finance, LLC's (Newtek) Motion for Summary Judgment (Motion), filed June 17, 2021.[1] (Docs. 46, 47). Plaintiffs filed a Response on July 15, 2021, and Newtek filed its Reply on July 29, 2021. (Docs. 53 and 55, respectively). The Motion is fully and timely briefed. Having considered the briefing, exhibits, and the applicable law, the Court grants Newtek's Motion. The Court will enter judgment in favor of Newtek, dismiss the breach of contract claim with prejudice, and otherwise dismiss the case.[2]

I.    Facts and Procedural History

Reservations Unlimited, a New Mexico limited liability company, is a property management company located in Red River, New Mexico. (Doc. 47) at 3, Undisputed Facts (UFs) 1 and 2; *see also* (Doc. 53) at 2 (identifying Facts 14, 15, 16, and 33 as disputed, and the remainder as undisputed). David Wilcox, a licensed New Mexico real estate broker, is the sole

---

[1] Newtek is the sole remaining Defendant in this case. Ms. Bedrossian was previously dismissed by Memorandum Opinion and Order on October 21, 2020. (Doc. 23).

[2] The Court notes that it has subject matter jurisdiction based on diversity. 28 U.S.C. § 1332.

owner and single member of Reservations Unlimited. (Doc. 47) at 3, UFs 7 and 8. In December 2018, Reservations Unlimited managed around 85 properties in Red River, New Mexico; had annual gross revenues of approximately $1.8 million; and employed fifteen (15) people. (Doc. 47) at 3, UFs 3-5.

Reservations Unlimited began occupying the commercial property located at 312 West Main Street, Red River, NM 87558 (the "Property") for its business operations in the mid-1990s, and Mr. Wilcox began physically working at the Property on October 1, 2016. (Doc. 47) at 4, UFs 10, 12. On or about June 12, 2018, Mr. Wilcox agreed to purchase the Property for $380,000.00. (*Id.*) at 4, UF 13. As part of the purchase agreement, Mr. Wilcox did not have an appraisal conducted to determine the fair market value of the Property. (*Id.*) at 4, Fact 15.[3]

Subsequent to entering the purchase agreement for the Property, Plaintiffs applied for a loan from Newtek in the amount of $569,000.00 (the "Loan"). (*Id.*) at 5, UF 18. On November 14, 2018, Newtek issued a letter (the "Approval Letter") to Plaintiffs advising that Newtek was "pleased to advise [them] that it has approved [their] application for a Small Business Administration ("SBA") loan subject to the satisfaction of the terms and conditions set forth herein." (*Id.*) at 5, UFs 20 and 21 (emphasis added); *see also* (Doc. 47-2), Approval Letter. The Approval Letter authorized the following:

LOAN AMOUNT: $569,000.00 SBA 7(a) Installment Loan
USE OF PROCEEDS:

| Description | SBA Loan Proceeds | Equity Injection | Seller Financing | Other Financing | Total Project Cost |
|---|---|---|---|---|---|
| Land Acquisition | $304,000 | $38,000 | $0 | $0 | $342,000 |
| Working Capital | $60,872 | $0 | $0 | $0 | $60,872 |
| SBA Guarantee Fee | $12,803 | $0 | $0 | $0 | $12,803 |
| Debt Refinance | $191,326 | $0 | $0 | $0 | $191,326 |
| TOTAL | $569,000 | $38,000 | $0 | $0 | $607,000 |

---

[3] Plaintiffs identify Fact 15 as "disputed," but failed to "refer with particularity to those portions of the record upon which the non-movant relies[.]" D.N.M.LR-Civ. 56.1(b). Pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed because it was not "specifically controverted."

(Doc. 47-2) at 2. Put another way, the Loan provided funds for Plaintiffs to purchase the Property, inject the business with working capital, refinance debt, and pay the SBA Guarantee Fee. (*Id.*).

The Approval Letter set forth the collateral for the Loan:

| COLLATERAL: | First Priority Security Interest pursuant to General Security Agreement and UCC-1 filings on all of Borrower's business assets of any kind, tangible and intangible. Lender reserves the right to pre-file the UCC filing prior to the loan closing. Should the loan not close, the Lender will release the filed UCC recording. |
|---|---|
| | First Mortgage/Deed of Trust on commercial property located at 312 W Main St, Red River, NM, 87558. |
| | First Mortgage/Deed of Trust on residential property located at 907 Tenderfoot Ct, Red River, NM, 87558. |
| | 1st Lien on the following motor vehicles: TBD Borrower to provide original Certificates of Title at or prior to closing. |

(Doc. 47-2) at 3.

The Approval Letter contains an "OTHER" section setting forth the following:

| OTHER: | a) Borrower will deliver to Newtek evidence of principal's equity injection, in the amount of $38,000.00, in a form conforming with SBA requirements. |
|---|---|
| | b) Satisfactory review and approval of an appraisal of the property located at 312 W Main St, Red River, NM, 87558 with a fair market value of $380,000. |
| | c) Satisfactory review and approval of an appraisal of the property located at 907 Tenderfoot Ct, Red River, NM, 87558 with a fair market value of $217,188. |
| | d) Satisfactory review and approval of an Environmental Report TSA of the property located at 312 W Main St, Red River, NM, 87558. |
| | e) Equipment Appraisal with a minimum orderly liquidation value of $89,879. |
| | f) Survey (Full-ALTA) on property located at 312 W Main St, Red River, NM, 87558. |
| | g) Survey (Full-ALTA) on property located at 907 Tenderfoot Ct, Red River, NM, 87558. |
| | h) Borrower to occupy at least 51% of the total rentable property |
| | i) K1s for DGG Ventures 2015, 2016 and 2017 |
| | j) K1 for UPE 2017 |

(*Id.*) at 4.

3

Finally, the Approval Letter includes a choice of law provision, providing that the "letter will be governed by the laws of the State of New York, ignoring conflict of law provisions." (*Id.*).

On December 11, 2018, several weeks after the parties signed and executed the Approval Letter, Mr. Wilcox emailed Christine Bedrossian, a Newtek loan closer, asking, among other things, "to see a copy of the appraisal when it is received so to ensure that the building value meets or exceeds the $380K purchase price on the real estate contract." (Doc. 47-4) at 5; *see also* (Doc. 47) at 7, UF 29. That same day, Ms. Bedrossian replied that Newtek "cannot release the appraisal until after the closing." (Doc. 47-4) at 3; (Doc. 47) at 7, UF 30. Mr. Wilcox again emailed Ms. Bedrossian and asked why Newtek could not release the appraisal until after closing. (Doc. 47-4) at 2. Mr. Wilcox further stated:

> I have already paid for it and simply want to confirm that the building has a value at or above what I have agreed to pay for it. The contract is contingent upon the appraisal so if it comes in lower than $380K I will need to work with the seller on a modification. If you can provide me with the appraised value in writing without providing the entire report at this time that would suffice (unless it is lower than $380 and in that case the seller would ask for it).

(*Id.*). Finally, Ms. Bedrossian responded that "[t]his is a Newtek rule, but if comes in lower we will advise you." (*Id.*).

Asset Valuation Services, LLC, conducted an appraisal of the Property on December 18, 2018, on behalf of Newtek. That Appraisal valued the Property at $220,000.00. (Doc. 53) at 3, Plaintiffs' UF 9; (Doc. 55) (not disputing Plaintiffs' UF 9).

Newtek did not provide the appraisal prior to December 26, 2018, the date on which the Loan and the purchase agreement for the Property both closed. (Doc. 47) at 8, UF 35.

Newtek separately entered an agreement with the SBA related to the Loan. (Doc. 20-1). The Court previously decided, and maintains, that the SBA Authorization "did not serve as a

4

contract between Reservations and Newtek" and "cannot serve as the basis for Plaintiffs' breach of contract claim." (Doc. 23) at 11-12.

In the Court's prior ruling, the Court determined that New York law applies to interpretation of the Approval Letter. (Doc. 23) at 13. The Court did not address, at that time, what law applies to Plaintiffs' argument that Ms. Bedrossian's email constituted an amendment to the Approval Letter or a separate contract between Plaintiffs and Newtek.[4] (*Id.*) at 14.

II.     Standard of Review

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views "the facts and their reasonable inference in the light most favorable to the non-movant." *Hall v. Allstate Fire and Cas. Ins. Co.*, 20 F.4th 1319, 1323 (10th Cir. 2021).

III.    Analysis

The sole remaining claim at issue is Count IV: Breach of Contract. Plaintiffs allege that Newtek "breached the agreement with Reservations Unlimited by failing to disclose the appraisal by failing to abide by its obligations pursuant to the contract." (Doc. 1-1) at 9 (Compl. at ¶ 41).

---

[4] Similarly, the Court did not address whether Plaintiffs could be third-party beneficiaries of Newtek's agreement with the SBA. (Doc. 23) at 15. However, the Court need not address this matter both because Plaintiffs did not advance this argument in response to the Motion and because Plaintiffs expressly waived and disclaimed any rights or benefits under the SBA Authorization when Mr. Wilcox signed the Borrower's Certification. (Doc. 47-5).

5

During discovery, Plaintiffs clarified the breach of contract claim is based on four documents: the Approval Letter, the SBA Authorization, the loan agreement, and the email from Ms. Bedrossian. (Doc. 47-6) at 4, Answer to Interrogatory No. 8.

Newtek moves for summary judgment on this claim for several reasons. First, Newtek contends the SBA Authorization "is between Lender and SBA and creates no third party rights or benefits to Borrower." (Doc. 47) at 12 n.1 (citing (Doc. 47-5) at 1, Borrower's Certification signed by Mr. Wilcox on Dec. 26, 2018). Second, Newtek asserts that "the law imposes no duty requiring a lender to give a borrower an appraisal that the lender has performed for its own benefit in order to determine if collateral provides adequate security for a loan." (Doc. 47) at 13. Third, Newtek maintains the appraisal provision in the Approval Letter did not create an affirmative duty for Newtek to obtain an appraisal at or above the purchase price. (*Id.*) at 16. Put another way, Newtek argues that the appraisal provision "was but one of the requirements that had to be met"—that is, a condition precedent—"before Newtek was obligated to make the Loan," and not a contractual promise. (*Id.*) at 17. Fourth, and relatedly, Newtek alleges that the appraisal provision contains no promissory language and is instead a "condition of Newtek's performance pursuant to the Approval Letter." (*Id.*) at 19. Fifth, applying New Mexico law, Newtek argues that Ms. Bedrossian's email did not create a contract because there was no consideration for her statement. (*Id.*) at 24. Finally, Newtek claims that Plaintiffs cannot establish damages. (*Id.*) at 26.

A. *Newtek's First and Second Arguments*

As an initial matter, Plaintiffs make no argument addressing the SBA Authorization in the context of the Borrower's Certification signed by Mr. Wilcox on December 26, 2018. Specifically, Plaintiffs cursorily allege that the "Authorization and the Commitment Letter each

have identical obligations to obtain an appraisal equal to or in excess of the amount of the loan dedicated to purchasing the Property." (Doc. 53) at 6. Even if the Court accepts that the SBA creates an obligation for Newtek to obtain such an appraisal, Plaintiffs are not a party to the contract and are not in privity of contract. Under New Mexico or New York law, Plaintiffs waived any interest in the SBA Authorization and thus cannot sustain a breach of contract claim on that basis.

With respect to Newtek's second argument, Plaintiffs concede the point. In their Response, Plaintiffs clarified that they "are not asserting that there is an independent duty to provide appraisals to [borrowers] outside of a contractual obligation." (Doc. 53) at 5. Plaintiffs assert that "[t]he obligation in this case is based on the contract and not some general obligation of lenders to provide an appraisal to borrowers." (*Id.*). Accordingly, the parties agree that Newtek had no separate, non-contractual, extra-contractual, or general obligation to provide the appraisal to Plaintiffs.

B. *The Approval Letter under New York Law*

With respect to Newtek's third and fourth arguments, the parties agree that the Approval Letter is a contract. They disagree, however, on whether the appraisal condition constitutes a *promise* or a *condition* under New York law.

New York defines a "condition precedent [to performance]" as "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises. Most conditions precedent describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract[.]" *Stonehill Capital Mgmt., LLC v. Bank of the West*, 68 N.E.3d 683, 691 (N.Y. 2016) (quoting *IDT Corp. v. Tyco Group, S.A.R.L.*, 13 N.Y.3d 209, 214 (2009)). In contrast, "[a] promise is a

7

manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made." *Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 112 (1984).

"Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole." *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014). "The agreement is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *People v. Rodriguez*, 33 N.Y.3d 956, 963 (2019) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)). "In determining whether a given clause makes an event a condition, doubtful language should be interpreted as a promise rather than an express condition, especially where a finding of express condition would increase the risk of forfeiture by the obligee." *VXI Lux Holdco S.A.R.Rl. v. SIC Holdings, LLC*, 171 A.D.3d 189, 194 (N.Y. App. Div. 2019). "[T]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." *Id.* at 195 (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995)).

Here, Newtek advised Plaintiffs in the Approval Letter that loan approval was "subject to the satisfaction of the terms and conditions set forth" within the Letter and "contingent upon the issuance by the SBA of a 75% guaranty on this loan and compliance with SBA requirements." (Doc. 47-2) at 1. Thus, the terms capitalized "terms and conditions" laid out in the Approval

Letter can only be reasonably construed as conditions precedent to Newtek's obligation to fulfill its promise, that is, to lend $569,000.00 to Plaintiffs.

To read the appraisal provision as a promise would require the Court to accept that Newtek was contractually obligated to "review and approve an appraisal of the [Property] with a fair market value of $380,000." (Doc. 47-2) at 4. This means that an appraisal of less than $380,000, in and of itself, would constitute a breach of contract. This tortured construction cannot form the basis for a reasonable difference of opinion regarding the appraisal provision. Notably, Plaintiffs cite no authority for the proposition that an appraisal provision in a commercial loan could constitute a promise.

Accordingly, the Court concludes that the appraisal provision constitutes a condition precedent to Newtek's promise to make the loan. New York cases addressing appraisal provisions in loan agreements overwhelmingly consider the appraisal a condition precedent. *See, e.g., Fairway Prime Estate Management, LLC v. First American International Bank*, 99 A.D.3d 554, 557-58 (N.Y. App. Div. 2012) (allowing breach of contract claim to proceed where lender may "have frustrated or prevented [borrower's] compliance with [appraisal] condition precedent"). Thus, when the condition precedent failed, that is, when the appraisal came back at less than $380,000.00, *Newtek* had the option to terminate the contract and its performance would be excused due to failure of the condition precedent. The appraisal condition, however, did not create any affirmative duty which could be breached.

In their response, Plaintiffs correctly state, without citation, that "[i]f a condition is not met by a party then the other party in the contract is excused from performance." (Doc. 53) at 6. However, Plaintiffs' argument breaks down in the next sentence, where they state that "[i]n this case that means that either the appraisal requirement was a condition precedent for the loan to be

9

entered into or is a condition subsequent that excuses the Plaintiffs from performing under the loan agreement." (*Id.*) Plaintiffs apparently contend that construing the appraisal provision as a condition precedent, which failed, would also excuse *Plaintiffs'* performance under the Approval Letter and the subsequent Loan Agreement. Plaintiffs cite no authority for the proposition that failure of a condition precedent to a lender's obligation to make the loan would excuse the *borrower's* performance under the loan agreement. Moreover, Plaintiffs conflate a condition precedent to Newtek's performance as being a condition precedent to forming the contract. While the two are distinct concepts under New York law, Plaintiffs cite no authority nor make any substantive argument in support of the proposition that the Approval Letter did not form a contract.

For these reasons, the Court finds that the appraisal provision was a condition precedent to Newtek's performance under the Approval Letter. Additionally, based on the entirety of the Approval Letter, the Court finds that the appraisal provision was solely for Newtek's benefit and to assure Newtek that adequate collateral existed to secure the loan. Therefore, Newtek could (and impliedly did) waive the condition precedent of the Property appraisal provision. *See Goewey v. Delta D & I Corp.*, 175 A.D.2d 299, 301 (N.Y. App. Div. 1991) (finding party can waive condition precedent when said condition "is solely for the benefit of" that party).

Accordingly, the Court determines as a matter of law that Newtek did not breach the contract created by the Approval Letter.

C. *The Bedrossian Email under New Mexico Law*

The next question, then, is whether Ms. Bedrossian's December 11 email created a contract. In answering this question, the Court must first determine what law applies. Both parties cite and argue New Mexico law when discussing the email. (Doc. 47) at 24; (Doc. 53) at

10. Seeing no debate about what law applies to the email and whether the email created or modified a contract, the Court will apply New Mexico law.

Newtek argues that Ms. Bedrossian's email did not create a contract because there was no consideration for her statement. (*Id.*) at 24. Under New Mexico law, "[f]or a contract to be legally valid and enforceable, it 'must be factually supported by an offer, an acceptance, consideration, and mutual assent.'" *Flemma v. Halliburton Energy Svcs., Inc.*, 2013-NMSC-022, ¶ 28 (quoting *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 9).

"The burden of proof is on the party asserting that a valid contract exists." *Id.* To state a breach of contract claim, a plaintiff must allege "(1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach." *McCasland v. Prather*, 1978-NMCA-098, ¶ 7 (citing Wright and Miller, Fed. Prac. & Proc.: Civil § 1235 (1969)). Thus, Plaintiffs bear the burden of establishing that Ms. Bedrossian's email created a valid contract. Plaintiffs cannot meet this burden.

While it is not at all clear that there was any offer or acceptance involved with the email, Newtek challenges only the consideration element. "Consideration adequate to support a promise is essential to enforcement of the contract and must be bargained for by the parties." *Romero v. Earl*, 1991-NMSC-042, ¶ 6 (citing *Knoebel v. Chief Pontiac*, 61 N.M. 53, 57, 294 P.2d 625, 627-28 (1956)); *see also Tyler Group Partners, LLC v. Madera*, --- F. Supp. 3d ---, ---, 2021 WL 4479606, at *42 (D.N.M. Sept. 30, 2021) (quoting same). "Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promise in exchange for that promise." *Romero*, 1991-NMSC-042, ¶ 6 (internal quotation omitted); *see*

*also Tyler Group Partners, LLC*, 2021 WL 4479606, at *42 (quoting same). Put another way, consideration is

> any bargained-for-benefit or advantage to [the promisor] which was a reason why [promisor] wanted to enter into the contract, or any loss or detriment to [the promisee], which [the promisor] desired [the promisee] to suffer or which was a reason for [the promisor] to enter into the contract. Consideration may consist of a return promise, an act, a forbearance, or the creation, modification, or destruction of a legal relation.

NMRA Civ. UJI 13-814; *see also Lukoski v. Sandia Indian Mgmt. Co.*, 1988-NMSC-002, ¶¶ 4-8.

Plaintiffs contend that they "gave up their right to renegotiate the Purchase Agreement in accepting the agreement and Newtek's promise to also provide the amount of the appraisal in addition to obtaining an appraisal at or above the purchase price of the Property." (Doc. 53) at 10. The Court is not persuaded.

Newtek did not gain any advantage by making the alleged promise, and Plaintiffs have no evidence to suggest Newtek desired the Plaintiffs to give up this right or that Plaintiffs' relinquishment of this right induced Newtek to make the alleged promise. Indeed, Newtek is not a party to the Purchase Agreement. Moreover, Plaintiffs submitted no evidence and made no argument suggesting that Newtek sought *anything* from Newtek "in exchange for that [alleged] promise." *Romero*, 1991-NMSC-042, ¶ 6.

Plaintiffs adduced no genuine dispute as to any material fact with respect to Ms. Bedrossian's email or the consideration element. Based on the evidence before the Court, no reasonable jury could find that consideration supported Ms. Bedrossian's email, and thus no reasonable jury could find that Ms. Bedrossian's email created a contract. For these reasons, the Court concludes, as a matter of law, that Ms. Bedrossian's email did not create a contract and cannot sustain a claim for breach of contract.

Because the Court determines that the appraisal provision did not constitute a promise and, therefore, Newtek did not breach the Approval Letter, and that Ms. Bedrossian's email did not create a contract, the Court need not address whether Plaintiffs could establish the damages element of any breach of contract claim.

IV. Conclusion

For the reasons discussed herein, Newtek's Motion for Summary Judgment (Doc. 47) is granted and Plaintiffs' claim for breach of contract is dismissed with prejudice.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE